IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARTHA RODRIGUEZ,<br>    *Plaintiff*,<br><br>v.<br><br>FULTON FRIEDMAN & GULLACE, LLP,<br>MIDLAND FUNDING, LLC, MIDLAND<br>CREDIT MANAGEMENT, INC., *and*<br>ENCORE CAPITAL GROUP, INC.<br>    *Defendants*. | CIVIL ACTION NO.<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

### NATURE OF ACTION

1.   This is an individual action brought under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Texas Debt Collection Practices Act, TEX. FIN. CODE § 392.001 *et seq.*

### JURISDICTION AND VENUE

2.   This Court has jurisdiction under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

3.   Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this State and this district and where Defendants transact business in this State and this district.

### PARTIES

4.   Plaintiff, Martha Rodriguez ("Plaintiff"), is natural person who at all relevant times resided in Houston, Texas.

1

5.	Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due Midland Funding, LLC, arises from a transaction or transactions in which the money, property, insurance, goods and/or services that are the subject of the transaction(s) were incurred primarily for personal, family, or household purposes.

6.	Specifically, Plaintiff's alleged obligation arises from a personal consumer credit card issued by Bank of America used for consumer purchases such as groceries and gasoline.

7.	Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) and TEX. FIN. CODE § 392.001(1).

8.	Defendant, Fulton, Friedman & Gullace, LLP ("FFG"), is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff as defined by 15 U.S.C. § 1692a(5), and a "consumer debt" as defined by TEX. FIN. CODE § 392.001(2).

9.	FFG is registered with the Texas Secretary of State as a third-party debt collector—pursuant to TEX. FIN. CODE § 392.101—under the name "Fulton Friedman & Gullace LLP."

10.	FFG is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and TEX. FIN. CODE § 392.001(6).

11.	Defendant, Encore Capital Group, Inc. ("Encore") is a publicly traded Delaware corporation who at all relevant times was engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5), and a "consumer debt" as defined by TEX. FIN. CODE § 392.001(2).

2

12. Encore is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6).

13. Defendant, Midland Funding, LLC ("Midland Funding"), is a Delaware corporation and a wholly owned subsidiary of Encore.

14. Midland Funding is in the business of taking title to and collecting delinquent debts originally owed to third parties.

15. Midland Funding at all relevant times was engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5), and a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

16. Midland Funding is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6).

17. Defendant, Midland Credit Management, Inc. ("Midland Credit Management"), is a Kansas corporation and a wholly owned subsidiary of Encore.

18. Midland Credit Management at all relevant times was engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5), and a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

19. Midland Credit Management is a "debt collector" as defined by 15 U.S.C. § 1692a(6), and Tex. Fin. Code § 392.001(6).

20. FFG, Encore, Midland Funding, and Midland Credit Management acted jointly and in concert to collect a debt from Plaintiff and each member of the proposed class of consumer debtors which Plaintiff seeks to represent.

**FACTUAL ALLEGATIONS**

21. As part of its general practices, Encore raises capital from third party financial institutions and investors to fund massive purchases of deeply discounted charged-off consumer receivable portfolios from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios.

22. Encore manages the collection of the charged-off consumer debts that it purchases through its subsidiary entities. Midland Funding takes title to the charged-off debts that Encore purchases and places the charged-off debts with Midland Credit Management, for collection pursuant to a written servicing agreement. Midland Credit Management places charged-off accounts with FFG for collection pursuant to a written collection agreement.

23. Encore is involved in every stage of the collection process, including legal outsourcing, continuously refining its analysis to determine the most effective collection strategy for each account.

24. In accordance with its general practices, Encore secured funds from investors and lenders for the purpose of purchasing the portfolios of charged-off consumer receivables which included Plaintiff's alleged debt (the "Debt").

25. Encore oversaw the decision to obtain the Debt, made the decision to obtain the Debt, and oversaw the collection of the Debt pursuant to its general practices.

26. Prior to the purchase of the Debt, Encore prepared quantitative analyses based on extracting customer level data from external sources, other than the issuer, to analyze the potential collectability of the portfolio.

27. Encore also analyzed the portfolio by comparing it to similar portfolios previously acquired and serviced by Encore and its subsidiaries.

28. Members of Encore's management performed qualitative analyses of other matters affecting the value of the portfolios, including a review of the delinquency, charge off, placement and recovery policies of the originator as well as the collection authority granted by the originator to any third party collection agencies, and, if possible, by reviewing their recovery efforts on the particular portfolios.

29. Once the evaluations were completed, Encore's Investment Committee, comprised of various members of its senior management, discussed the findings and decided to purchase the portfolio which included the Debt.

30. Once purchased, Encore managed and exercised material control over many aspects of the collection process of the Debt, including legal outsourcing, pursuant to its general practices.

31. Encore manages the collection of the Debt through its subsidiary entities.

32. Encore refers to Midland Funding as a "debt-owning company" within the Encore debt-collection enterprise.

33. Pursuant to Encore's general practices, Midland Funding took title to the Debt following the purchase by Encore.

34. Encore refers to Midland Credit Management as a servicing company within the Encore debt-collection enterprise.

35. Under contract with Encore and in accordance with Encore's general practices, Midland Funding entered into a servicing agreement (the "Servicing Agreement") with Midland Credit Management, pursuant to which Midland Credit Management became responsible for managing and servicing the collection of the Debt.

36. The terms of the Servicing Agreement contain specific instructions, directives, limitations, and multiple requirements concerning Midland Credit Management's authority concerning Midland Funding's placement of the Debt with Midland Credit Management for collection.

37. The Servicing Agreement grants Midland Credit Management significant power and authority to conduct and manage the collection of the Debt, including, without limitation, the commencement of legal proceedings in Midland Funding's name.

38. FFG is a law firm that represents Midland Funding under contract with Midland Credit Management.

39. The Servicing Agreement grants Midland Credit Management the ability to outsource collection of the Debts to FFG pursuant to a written collection agreement between Midland Credit Management and FFG (the "Collection Agreement").

40. Midland Credit Management retained FFG to render legal services, including filing lawsuits, to collect the Debt on behalf of Encore, Midland Funding, and Midland Credit Management pursuant to the Collection Agreement.

41. Encore's Legal Outsourcing Department oversaw and managed the legal outsourcing of the Debt to FFG, pursuant to its general practices.

42. Through the Collection Agreement, Encore, Midland Funding, and Midland Credit Management impose exacting standards concerning the manner in which FFG is required to perform collection activities on the Debt on behalf of, and at the direction of, Midland Credit Management, Midland Funding, and Encore.

43. The Collection Agreement governs and controls the manner in which FFG performs debt-collection services related to the Debt on behalf of, and at the express direction of, Midland Credit Management, Midland Funding, and Encore.

44. The Collection Agreement provides for Midland Credit Management's exercise of material control over almost every aspect of FFG's collection of the Debt.

45. Midland Credit Management has created a "Legal Outsourcing Firm Training Manual," which it has provided to FFG for use in collecting the Debt pursuant to the Collection Agreement.

46. Among many other requirements, the Collection Agreement mandates that FFG abide by, and conduct its debt-collection operations in a manner consistent with, the Midland Account Handling Procedures.

47. The Midland Account Handling Procedures may be modified by Midland Credit Management from time-to-time in its sole and absolute discretion.

48. The Collection Agreement contains stringent daily reporting requirements pursuant to which FFG makes daily reports consisting of all information regarding any activity that occurs during that work day on the account for the Debt, including but not limited to, communications or attempted communications between the FFG and Plaintiff or third parties.

49. The Collection Agreement names Midland Funding and Encore as third-party beneficiaries in relation to collection of the Debt.

50. The Collection Agreement requires that, in obtaining insurance related to its collection of the Debt, FFG must name Midland Funding and Midland Credit Management as loss payee in its insurance policies.

51. Encore's management is responsible for setting the strategic direction and managing all legal outsourcing operations and personnel, driving process improvements, and for ensuring that FFG is competitively collecting the Debt.

52. Encore's Head of Legal Outsourcing oversees all Legal Outsourcing teams across the company, providing essential leadership and staff development consistent with overall company objectives and goals for collecting the Debt.

53. Encore's and Midland Credit Management's Director of Legal Outsourcing, and Manager of Legal Outsourcing, monitor and control the day-to-day operations of FFG in collecting the Debt pursuant to the Collection Agreement.

54. Encore pays a fee to FFG based on an established fee schedule for FFG's collection of the Debt, as further defined in the Collection Agreement.

55. On April 28, 2011, FFG, itself and on behalf of Midland Funding, Midland Credit Management and Encore, filed a petition against Plaintiff in the Justice Court for Harris County, Texas (the "Justice Court").

56. On February 29, 2012, Plaintiff requested FFG provide dates for the depositions of Midland Funding's representative.

57. On April 3, 2012, having received no response to Plaintiff's request for available deposition dates, Plaintiff served notice of Midland Funding's depositions would be conducted on May 2, 2012 and May 3, 2012.

58. On April 6, 2012, Plaintiff filed a motion to compel Midland Funding to respond to Plaintiff's written discovery requests and Plaintiff set the motion hearing for May 1, 2012.

59. On April 13, 2012, FFG requested a discovery conference for the purpose of avoiding the hearing on Plaintiff's motion to compel.

60. To avoid the hearing, FFG agreed that Midland Funding would produce certain supplemental responses and documents on or before April 23, 2012.

61. April 23, 2012, came and passed without production of supplemental responses or documents.

62. Instead, FFG filed a motion to quash the deposition and for a protective order.

63. On April 24, 2012, Plaintiff informed FFG that she had no choice but to seek a court order compelling proper discovery responses from Midland Funding.

64. On April 26, 2012, Plaintiff sent FFG an email confirming that Midland Funding's depositions—properly noticed nearly one month before—would proceed as scheduled.

65. Having received no response to the April 26, 2012 email, and after checking to make sure that FFG had not filed any objections or motions, Plaintiff's counsel paid remitted payment for the scheduled depositions.

66. Thereafter, FFG sent an email that the date was not convenient for Midland Funding.

67. Plaintiff informed Midland that the depositions would proceed as noticed on May 2,2012 and May 3, 2012 due to FFG's lack of communication and lack of objections despite the passage of over one month.

68. On May 1, 2012, the Justice Court Ordered Midland Funding's corporate representatives to appear for their depositions, but permitted Midland Funding to appear telephonically.

69. On May 17, 2012, Plaintiff's counsel again requested FFG provide dates for the Justice Court ordered telephonic depositions.

70. Nevertheless, FFG failed to provide Plaintiff with the requested dates.

9

71. On May 18, 2012, Plaintiff formally served FFG with a notice to take Midland Funding's telephonic deposition in accordance with the Court's order.

72. Plaintiff sent FFG, via email, a courtesy copy of the notice of the Tex. R. Civ. P. 199 deposition.

73. In the courtesy email, Plaintiff agreed to accommodate any reasonable request for a change in date or time, so long as FFG made the request by May 23, 2012.

74. On May 21, 2012, FFG contacted Plaintiff and requested that Plaintiff propose three new dates for the depositions.

75. That same morning, Plaintiff provided FFG with the three requested proposed dates.

76. FFG failed to respond to Plaintiff's proposed dates.

77. On May 29, 2012, Plaintiff sent FFG an email advising that, because Plaintiff had been unsuccessful in confirming a deposition date, Plaintiff had noted Midland Funding's deposition for June, 8, 2012.

78. On June 4, 2012, FFG contacted Plaintiff to state that the attorney of record would be out of the state at the time of the scheduled deposition.

79. Further, FFG opined that the conflict may have been avoided had Plaintiff proposed 3 dates and falsely asserted that deposition notice had not been properly served.

80. However, along with the courtesy copy sent via email, Plaintiff also formally served the deposition notice in accordance with Tex. R. Civ. P. 21(a).

81. On June 8, 2012, Midland Funding failed to appear for the Justice Court ordered deposition.

82. On August 22, 2012, FFG served Plaintiff's counsel with a proposed order of dismissal without prejudice.

83. Upon information and good-faith belief, at the time it filed the lawsuit against Plaintiff, FFG had no intention of proceeding to a trial on the merits, but rather intended to obtain a default judgment or to coerce a settlement.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1692d

84. Plaintiff repeats and re-alleges each and every allegation above.

85. FFG violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff, in connection with the collection of an alleged debt.

86. As a result of its status as a "debt collector" as defined by the FDCPA, Encore is vicariously liable for FFG's (its agent's) violation of 15 U.S.C. § 1692d, which was committed within the normal course, scope, and authority of their agency relationship.

87. As a result of its status as a "debt collector" as defined by the FDCPA, Midland Funding is vicariously liable for FFG's (its agent's) violation of 15 U.S.C. § 1692d, which was committed within the normal course, scope, and authority of their agency relationship.

88. As a result of its status as a "debt collector" as defined by the FDCPA, Midland Credit Management is vicariously liable for FFG's (its agent's) violation of 15 U.S.C. § 1692d, which was committed within the normal course, scope, and authority of their agency relationship.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

   a) Adjudging that FFG violated 15 U.S.C. § 1692d;

    b) Adjudging that Encore is vicariously liable for FFG's violation of 15 U.S.C. § 1692d;

    c) Adjudging that Midland Funding is vicariously liable for FFG's violation of 15 U.S.C. § 1692d;

    d) Adjudging that Midland Credit Management is vicariously liable for FFG's violation of 15 U.S.C. § 1692d;

    e) Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

    f) Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

    g) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action;

    h) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

    i) Awarding such other and further relief as the Court may deem just and proper.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1692e(10)

89.    Plaintiff repeats and re-alleges each and every allegation above.

90.    FFG violated 15 U.S.C. § 1692e(10) by using false representations or deceptive practices in connection with the collection of an alleged debt from Plaintiff.

91.    As a result of its status as a "debt collector" as defined by the FDCPA, Encore is vicariously liable for FFG's (its agent's) violation of 15 U.S.C. § 1692e(10), which was committed within the normal course, scope, and authority of their agency relationship.

92.    As a result of its status as a "debt collector" as defined by the FDCPA, Midland Funding is vicariously liable for FFG's (its agent's) violation of 15 U.S.C. § 1692e(10), which was committed within the normal course, scope, and authority of their agency relationship.

93. As a result of its status as a "debt collector" as defined by the FDCPA, Midland Credit Management is vicariously liable for FFG's (its agent's) violation of 15 U.S.C. § 1692e(10), which was committed within the normal course, scope, and authority of their agency relationship.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that FFG violated 15 U.S.C. § 1692e(10);

b) Adjudging that Encore is vicariously liable for FFG's violation of 15 U.S.C. § 1692e(10);

c) Adjudging that Midland Funding is vicariously liable for FFG's violation of 15 U.S.C. § 1692e(10);

d) Adjudging that MCM is vicariously liable for FFG's violation of 15 U.S.C. § 1692e(10);

e) Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

f) Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

g) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action;

h) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

i) Awarding such other and further relief as the Court may deem just and proper.

### COUNT III
### VIOLATION OF 15 U.S.C. § 1692f

94. Plaintiff repeats and re-alleges each and every allegation above.

95. FFG violated 15 U.S.C. § 1692f by using unfair or unconscionable means against Plaintiff in connection with an attempt to collect an alleged debt.

96. As a result of its status as a "debt collector" as defined by the FDCPA, Encore is vicariously liable for FFG's (its agent's) violation of 15 U.S.C. § 1692f, which was committed within the normal course, scope, and authority of their agency relationship.

97. As a result of its status as a "debt collector" as defined by the FDCPA, Midland Funding is vicariously liable for FFG's (its agent's) violation of 15 U.S.C. § 1692f, which was committed within the normal course, scope, and authority of their agency relationship.

98. As a result of its status as a "debt collector" as defined by the FDCPA, Midland Credit Management is vicariously liable for FFG's (its agent's) violation of 15 U.S.C. § 1692f, which was committed within the normal course, scope, and authority of their agency relationship.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that FFG violated 15 U.S.C. § 1692f;

b) Adjudging that Encore is vicariously liable for FFG's violation of 15 U.S.C. § 1692f;

c) Adjudging that Midland Funding is vicariously liable for FFG's violation of 15 U.S.C. § 1692f;

d) Adjudging that MCM is vicariously liable for FFG's violation of 15 U.S.C. § 1692f;

e) Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

f) Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

g) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action;

    h) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law;

    i) Awarding such other and further relief as the Court may deem just and proper.

## COUNT IV
## VIOLATION OF TEX. FIN. CODE § 392.304(a)(19)

99. Plaintiff repeats and re-alleges each and every allegation above.

100. FFG violated TEX FIN CODE § 392.304(a)(19) by using false representations or deceptive means to collect a debt or obtain information concerning a consumer.

101. As a result of its status as a "debt collector" and a "thirty-party debt collector" as defined by the TDCA, Encore is vicariously liable for FFG's (its agent's) violation of TEX. FIN. CODE § 392.304(a)(19), which was committed within the normal course, scope, and authority of their agency relationship.

102. As a result of its status as a "debt collector" and a "thirty-party debt collector" as defined by the TDCA, Midland Funding is vicariously liable for FFG's (its agent's) violation of TEX. FIN. CODE § 392.304(a)(19), which was committed within the normal course, scope, and authority of their agency relationship.

103. As a result of its status as a "debt collector" and a "thirty-party debt collector" as defined by the TDCA, Midland Credit Management is vicariously liable for FFG's (its agent's) violation of TEX. FIN. CODE § 392.304(a)(19), which was committed within the normal course, scope, and authority of their agency relationship.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

    a) Adjudging that FFG violated TEX FIN CODE § 392.304(a)(19);

    b) Adjudging that Encore is vicariously liable for FFG's violation of TEX. FIN. CODE § 392.304(a)(19);

c) Adjudging that Midland Funding is vicariously liable for FFG's violation of TEX. FIN. CODE § 392.304(a)(19);

d) Adjudging that MCM is vicariously liable for FFG's violation of TEX. FIN. CODE § 392.304(a)(19);

e) Awarding Plaintiff injunctive relief, pursuant to TEX. FIN. CODE § 392.403(a)(1);

f) Awarding Plaintiff actual damages, pursuant to TEX. FIN. CODE § 392.403(a)(2);

g) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action;

h) Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

i) Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

104. Plaintiff is entitled to and hereby demands a trial by jury.

Respectfully submitted,

By: /s/ Noah D. Radbil
Noah D. Radbil
Texas Bar No. 24071015
Southern District Bar No. 1069583
WEISBERG & MEYERS, LLC
Two Allen Center, 1200 Smith Street
Sixteenth Floor
Houston, TX 77002
Telephone: (888) 595-9111
Facsimile: (866) 565-1327
Email: noah.radbil@attorneysforconsumers.com

*Attorney-in-Charge for the Plaintiff*
MARTHA RODRIGUEZ